**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4623
_____

MEI HUA CUI,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A098-594-352)
Immigration Judge: Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 30, 2010

Before:  SMITH, FISHER and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  August 31, 2010)
_____

OPINION
_____

PER CURIAM

Petitioner, Mei Hua Cui, seeks review of the Board of Immigration Appeals' (BIA)

final order of removal. We will deny the petition for review.

I.

Cui, a native and citizen of China, entered the United States in January 2005. On August 18, 2005, she applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), claiming that she would be persecuted if forced to return to China on account of her political involvement with North Korean refugees.

At her removal hearing, Cui testified that she left China because she had been under investigation for attempting to help a North Korean refugee obtain fraudulent identification papers. Cui explained that, before leaving the country, she had been working at a clothing store. One day, a friend asked her whether she might be able to obtain fake identification papers for a relative from North Korea who was in China illegally. Cui thought she might be able to help because she had once heard customers at the clothing store talking about efforts to help North Korean refugees. To this end, she asked her boss at the clothing store whether he could help the friend's relative. Cui's boss told her that he knew nothing about fake papers and did not have any other information for her.

Cui testified that Chinese authorities then came to the store to investigate whether her boss had been assisting North Korean refugees, and later went to Cui's home to inform her that she had been implicated in the investigation. According to Cui, the police left without arresting her. That same day, she decided to leave the country.

2

Cui told the court that, soon after arriving in the United States, she joined the Chinese Justice and Democracy Party (CJDP), an organization dedicated to helping North Korean immigrants in China. Cui stated that she has been active in this organization by attending protests and publishing two articles in support of the CJDP's mission. Cui claimed that Chinese authorities had recently learned of her political activities in the United States and had ordered her to withdraw from the CJDP. Cui further claimed that members of the CJDP who had been forced to return to China had been arrested, detained, and sent to labor camps.

Following the hearing, an Immigration Judge (IJ) found that Cui's testimony was not credible because her story was confusing, implausible, and inconsistent. The IJ therefore denied her applications for asylum, withholding of removal, and protection under the CAT. Cui sought administrative review, but the BIA dismissed her appeal. Cui now petitions for review of the BIA's order.[1]

## II.

We have jurisdiction over this appeal pursuant to 8 U.S.C. § 1252(a). We review the BIA's decision for substantial evidence. See Abdille v. Ashcroft, 242 F.3d 477, 483–84 (3d Cir. 2001). Under this standard, we will uphold the BIA's determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." (quoting 8 U.S.C. § 1252(b)(4)(B)). Because Cui filed her application after the enactment

---

[1] Cui does not seek review of the agency's disposition of her CAT claim.

3

of the REAL ID Act of 2005, the agency's credibility determinations are governed by the Act. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007). Under the REAL ID Act, an IJ may base his credibility determination on observations of the applicant's demeanor, the plausibility of her story, and on the consistency of her statements. See INA § 208(b)(1)(B)(iii); Gabuniya v. Att'y Gen., 463 F.3d 316, 322 n.7 (3d Cir. 2006). When an adverse credibility determination is based on implausibility, there must be record support and specific, cogent reasons for such a determination. Berishaj v. Ashcroft, 378 F.3d 314, 324 (3d Cir. 2004).

On appeal, Cui first argues that substantial evidence does not support the agency's implausibility determination. We disagree, as the record reflects that the IJ provided specific, cogent reasons for his implausibility finding. See id. For instance, the IJ found it implausible that Cui's friend would ask her to obtain false identification papers when Cui had no background in either criminal activity or humanitarian efforts. Similarly, the IJ stated that he did not understand "what led [Cui] to believe that her boss wanted to get himself involved in providing false documents to North Korean refugees," and that she offered no explanation as to why she solicited his help. The IJ also stated that it was implausible that Cui would decide to leave China after the police questioned her, as the police did not arrest her, indicate that they would seek a warrant, or even ask her to report back to the station. Because these findings are reasonably grounded in the record, we will defer to the IJ's implausibility determination. See Dia v. Ashcroft, 353 F.3d 228, 249 (3d

Cir. 2003).

Cui also argues that the inconsistencies in her testimony about her work with the CJDP were not significant enough to support the IJ's adverse credibility determination. We reject this argument as well. In his oral decision, the IJ noted that, although Cui testified that she had written two articles for the CJDP website, she was only able to produce a copy of one article. Similarly, although Cui testified that she attended protests and conferences with the CJDP, she was unable to identify the particular events. These inconsistencies, when viewed together and along with the general implausibility of Cui's story, support the IJ's credibility determination. See, e.g., Lin v. Mukasey, 534 F.3d 162, 167 (2d Cir. 2008) (holding that, under the REAL ID Act, "an IJ may rely on any inconsistency or omission in making an adverse credibility determination as long as the totality of the circumstances establishes that an asylum applicant is not credible") (internal quotation marks and emphasis in original omitted). Furthermore, to the extent that Cui argues that the cited inconsistencies are collateral to her claims, we note that, under the REAL ID Act, credibility determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." Gabuniya v. Att'y Gen., 463 F.3d 316, 321 (3d Cir. 2006) (internal quotation marks omitted).

### III.

For these reasons, we are satisfied that substantial evidence supports the BIA's

decision affirming the IJ's adverse credibility determination.  Accordingly, we are not compelled to conclude that the BIA erred in denying Cui's applications for asylum and withholding of removal.[2]  See 8 U.S.C. § 1252(b)(4)(B).  The petition for review will be denied.

---

[2]      To the extent that Cui argues that the BIA erred in failing to address the IJ's alternative conclusion that she failed to meet her burden of proof, we note that a persecution claim that lacks credibility cannot satisfy the burdens of proof necessary to establish eligibility for asylum or withholding of removal.  See Xie v. Ashcroft, 359 F.3d 239, 241-42 (3d Cir. 2004).

6